UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOM DENNIS HOPPER,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

_____/

CIV. NO.    06-14573
CRIM. NO.    04-50077

DISTRICT JUDGE PAUL V. GADOLA
MAGISTRATE JUDGE STEVEN D. PEPE

# REPORT AND RECOMMENDATION
## ON
## PETITIONER'S MOTION TO VACATE HIS SENTENCE (DKT. #18)

On October 19, 2006, Petitioner filed a motion under 28 U.S.C. § 2255 to vacate his sentence (Dkt. #23), which issued from his guilty plea to a charge of wire fraud. Petitioner's motion was referred to Magistrate Judge Capel for report and recommendation under 28 U.S.C. § 636 (b)(1)(B) (Dkt. #24), and was subsequently transferred to the undersigned (Dkt. #25). Respondent filed a response to Petitioner's motion on May 18, 2007 (Dkt. #28).

### I.    BACKGROUND

Petitioner and Respondent stipulated to the following facts in the plea agreement in the underlying criminal matter:

    1.    That from about January 24, 2002 and until about April 11, 2002, in the Eastern District of Michigan, defendant THOM DENNIS HOPPER (Hopper), devised and intended to devise a scheme to defraud Commonwealth Land Title Insurance Company (Commonwealth) and to obtain money from Commonwealth by removing and causing the removal, for unauthorized purposes, of

1

> approximately $1,829,000 from a trust account and concealing this unauthorized removal of funds. For the purpose of executing this scheme, Hopper caused the transmission of writings, signs, signals, or sounds by means of wire communication in interstate and foreign commerce, which caused funds to be wired from the Klear Title, LLC (Klear Title) trust account to the Vice & Hunter Trust account number 00214-15, Bank of Nova Scotia, Ottawa, Ontario, Canada.
> 2. At all relevant times, Commonwealth was a corporation organized under the laws of Pennsylvania with its principal place of business in Virginia.
> 3. Klear Title was a limited liability company organized under the laws of Michigan with its principal place of business in Genesee County, Michigan and controlled by Hopper as principal owner and president.
> 4. On or about February 26, 2001, Hopper, for Klear Title, entered into a Title Insurance Agency Agreement with Commonwealth pursuant to which Commonwealth appointed Klear Title to act as its agent. Klear Title solicited policies on behalf of Commonwealth and acted as the escrow agent in connection with the transfers of real property in Michigan, accepting escrow funds from purchasers, sellers, and lenders (beneficiaries).
> 5. Hopper, on behalf of Klear Title, and Commonwealth agreed that: (a) all funds received by Klear Title, other than commissions and agreed upon fees, would be held in trust in a federally insured financial institution in a segregated account, designated as an "escrow" or "settlement funds" account; and, (b) Klear Title and Hopper would only disburse funds to discharge obligations on behalf of the beneficiaries for their entrusted purposes.
> 6. From about January 24, 2002 and until about April 11, 2002, Hopper wrongfully misappropriated and diverted trust funds from this segregated account for purposes other than the entrusted purposes. Hopper fraudulently used disbursements from the trust account to fund his own personal business transactions, such as purchasing a race track, football team, and other businesses.
> 7. On or about March 28, 2002, THOM DENNIS HOPPER, for the purpose of executing the scheme, did transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire communication, that is, a wire transfer, $635,000 from the Citizens Bank account number 3128021734 of Klear Title, Flint, Michigan to the Vice & Hunter Trust account number 00214-15, Bank of Nova Scotia, Ottawa, Ontario, Canada.

(Rule 11 Plea Agreement, Dkt. #2, pp. 2-5.) Petitioner was convicted on his guilty plea to wire fraud, in violation of 18 U.S.C. § 1343 (Judgment, Dkt. #19, p.5), and was sentenced to 33.5 months imprisonment and 3 years supervised release (Dkt. #19, p. 2, 3). Petitioner's judgment was entered on January 17, 2006. Because he did not file a direct appeal, Petitioner's conviction

therefore became final on January 31, 2006, the last day on which he could have filed an appeal.[1]

## II. DISCUSSION

Petitioner presents three grounds for his motion to vacate his sentence, as follows:

1.  Petitioner was "denied effective assistance of counsel at the time of sentencing when he was advised that he had no right to appeal the issues concerning ineffective assistance of counsel and/or the sentencing judge having used illegal information at the time of sentence . . ."

2.  The sentencing court's reliance on undisclosed letters in sentencing the movant for fraud was improper under the Federal Rule of Criminal Procedure 32, and was constitutional error that requires re-sentencing.

3.  The court's use of correspondence from Petitioner's wife's ex-husband, which was undisclosed to Petitioner, was a violation of the Fifth Amendment, of the Federal Rules of Criminal Procedure 32 and 52(b), and of the United States Sentencing Guidelines, Sections 1B1 et seq.

### A. Standard of Review

A prisoner seeking relief under Section 2255 "must allege as a basis for relief: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Mallett v. U.S.*, 334 F.3d 491, 496-97 (6th Cir. 2003), citing *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Where the petitioner's motion alleges a non-constitutional error, the petitioner must establish a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1968)).

---

[1] Petitioner had ten days (excluding weekends and holidays) from the day his judgment was entered within which to file a notice of appeal, according to Federal Rule of Appellate Procedure 4(b).

3

A petitioner is procedurally barred from raising claims in a § 2255 motion, even those of constitutional magnitude, to which no contemporaneous objection was made or which were not presented on direct appeal. *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a motion under § 2255 only if the defendant first demonstrates either cause for the default and actual prejudice or that he is actually innocent. *Bousley v. United States*, 523 U.S. 614, 622 (1998).

The procedural default rule does not apply to claims of ineffective assistance of counsel. Claims of ineffective assistance of trial counsel generally are not reviewable on direct appeal, because the record may be inadequate to permit review. *See United States v. Kincaide*, 145 F.3d 771, 785 (6th Cir. 1998); *United States v. Tucker*, 90 F.3d 1135, 1143 (6th Cir. 1996). Consequently, such claims may be raised for the first time in a § 2255 proceeding, without regard to a failure to raise them on direct appeal. *See Tucker*, 90 F.3d at 1143; *United States v. Allison*, 59 F.3d 43, 47 (6th Cir. 1995).

In an action to vacate or correct the sentence, a court is required to grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255. Yet, the statute "does not require a full blown evidentiary hearing in every instance . . . . Rather, the hearing conducted by the Court, if any, must be tailored to the specific needs of the case, with due regard for the origin and complexity of the issues of fact and the thoroughness of the record on which (or perhaps, against which) the section 2255 motion is made.'" *Smith v. United States*, 348 F.3d 545, 550-51 (6th Cir. 2003) (quoting *United States v. Todaro*, 982 F.2d 1025, 1030 (6th Cir. 1993)). No evidentiary hearing is required if the

petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Engelen v. United States*, 68 F .3d 238, 240 (8th Cir.1995)). In sum, where the motion is inadequate on its face or, although facially adequate, is conclusively refuted by the files and records of the case, a hearing is not necessary. 28 U.S.C. § 2255; *Neal v. United States*, No. 94-2416, 1995 WL 325716, at *2 (6th Cir. 1995) (citing *United States v. Carbone*, 880 F.2d 1500, 1502 (1st Cir. 1989)).

    **C.**    **The Sentencing Court's Violation of Federal Rule of Criminal Procedure 32(i)**

The government concurs with Petitioner that the Court did consider several letters at the sentencing, which had not been revealed to either of the parties. After reviewing the wire fraud charge against Petitioner and after recounting the factors that must be considered in conjunction with the advisory sentencing guidelines, the Court stated:

> Now, as I've indicated, I think your crime is a serious one, a very very very serious one. Your conduct is deplorable and inexcusable. You've apparently -- you've remarried again. I think this is your fifth marriage as I'm -- as I understand from the pre-sentence report. You now are apparently relying on the fact that your -- your fifth wife has some assets that may take care of your obligation here for your financial obligation.
> I hope you're better to her than you have been apparently to all your other wives. I've got a very extensive dossier furnished to me by your prior wife. And that certainly doesn't add to your stature in the Court's eyes at all.
> I've got a huge array of detrimental information furnished to me, both by an official of the professional football team in Florida, head coach and general manager of that team, and also of course by your former wife. There was one -- a one page letter that said anything good about you of all the information that was furnished to me.

The government concedes that the court's consideration of these letters was error in

violation of Federal Rule of Criminal Procedure 32(i)(1)(C), as interpreted by the Sixth Circuit in *United States v. Hayes*, 171 F.3d 389, 395 (6th Cir. 1999)*,* and *United States v. Meeker*, 411 F.3d 736, 741 (6th Cir. 2005). In *Hayes*, the Sixth Circuit expressed its disagreement with *United States v. Curran*, 926 F.2d 59, 61-62 (1st. Cir. 1991), in which the First Circuit held that a failure to disclose victim impact letters violated neither Rule 32 nor the Due Process Clause. The Sixth Circuit held that a sentencing court "plainly violated the procedures required by Rule 32" when it failed to provide the victim letters or a summary thereof to the defendant, and that this error substantially affected the defendant's rights. Although the court pointed out in dicta that Federal Rule of Criminal Procedure 32 protects the right to due process by requiring disclosure of most information relied upon at sentencing, 171 F.3d at 395, the *Hayes* court did *not* hold that reliance on undisclosed victim letters was a violation of the Due Process clause. In *Meeker*, the Sixth Circuit held that a defendant's substantial rights were not affected by the sentencing court's reliance on undisclosed victim letters, where the evidence was essentially irrebuttable and cumulative of other evidence in the record of which the defendant was aware.

The Sixth Circuit has therefore made clear that a violation of Rule 32 is an error of law and can constitute reversible error on appeal. Yet, "it hardly bears repeating that 'an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment.'" *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993) (citing *United States v. Frady*, 456 U.S. 152, 165 (1982) (quotations omitted)). The Supreme Court in *Hill*, 368 U.S. 424 (1962), addressed the limited question of whether a petitioner may raise a claim in a post-conviction proceeding that the sentencing court failed to comply with Federal Criminal Rule 32(a). The Court held that the failure to follow the formal requirements of Rule 32(a) is not of itself an error that can be raised in a collateral attack, and stated:

6

>The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. *It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present "exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent."*

*Hill*, 368 U.S. at 428 (citations omitted) (emphasis added).

The Supreme Court also applied the reasoning in *Hill* to its review of a lower court's violation of Federal Rule of Criminal Procedure 11 in *United States v. Timmreck*, 441 U.S. 780 (1979). There, the district court accepted the defendant's plea without informing him that there was mandatory special parole term. The Supreme Court held that:

>Such a violation is neither constitutional nor jurisdictional: the 1966 amendment to Rule 11 obviously could not amend the Constitution or limit the jurisdiction of the federal courts. Nor can any claim reasonably be made that the error here resulted in a "complete miscarriage of justice" or in a proceeding "inconsistent with the rudimentary demands of fair procedure."
>
>. . .
>
>[Respondent's] only claim is of a technical violation of the Rule. That claim could have been raised on direct appeal, *see McCarthy v. United States*, 394 U.S. 459, 89 S. Ct. 1166, 22 L .Ed. 2d 418, but was not. *And there is no basis here for allowing collateral attack "to do service for an appeal."*
>
>*Indeed, if anything, this case may be a stronger one for foreclosing collateral relief than the <u>Hill</u> case. For the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas.*
>
>"Every inroad on the concept of finality undermines confidence in the integrity of our procedures; and, by increasing the volume of judicial work, inevitably delays and impairs the orderly administration of justice. [. . . ]"

*Timmreck*, 441 U.S. at 783-85 (emphasis added) (citations omitted).

Although the *Hayes* court stated that the use of undisclosed evidence against a criminal

defendant is the type of error that may undermine the fairness of a proceeding and tarnish the public reputation of judicial proceedings, the Sixth Circuit has *not* held that a violation of Rule 32 amounts to a Due Process Clause violation. The error is therefore not a constitutional error. Because Petitioner is alleging that he is entitled to relief under Section 2255 due to an error of law that does not amount to a violation of due process, the error must be so egregious as to render the entire proceeding fundamentally invalid, *Mallett*, 334 F.3d at 496-97, or must be a fundamental defect that inherently results in a complete miscarriage of justice, *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States,* 368 U.S. 424, 428 (1968)).

In this case, Petitioner executed a Rule 11 Plea Agreement, in which the parties agreed that Petitioner's total offense level should be 19, and that his guideline sentencing range should be 30 to 37 months; the parties recognized that the Court may reject these calculations (Dkt. #2, p. ? ). This calculation of Petitioner's sentencing guideline range represented "the stipulations of the parties with respect to *all of the sentencing guideline provisions that they believe apply in this case (including any grounds for departure)* [emphasis added]." The parties also agreed that, pursuant to Rule 11(c)(1)(C), a sentence of no more than the mid-point of the range that the court found to be applicable would be an appropriate disposition of the case. Finally, Petitioner waived his right to appeal his sentence in the following circumstances:

> If the court imposes a sentence equal to or less than the sentence described in ¶ 2 of this agreement [the mid-point of the guideline range], defendant waives all appeal rights, including all rights under 28 U.S.C. § 1291 to appeal the conviction, and all rights under 18 U.S.C. § 3742 to appeal the sentence imposed, except defendant may appeal the district court's failure to accept a stipulation contained within this agreement regarding applicable guideline provisions. Defendant may also appeal the district court's decision imposing an offense level enhancement based on a factor not the subject of a stipulation if the defendant makes a timely objection in the district court. Whatever sentence is imposed,

> defendant waives all appeal rights to challenge the constitutionality of the sentencing guidelines.

Dkt. #2.

Before his sentencing hearing, Petitioner filed a sentencing memorandum through his counsel (Dkt. #17). Although Petitioner stated in his Rule 11 Plea Agreement that all of the applicable guideline provisions (including grounds for departure) required a guideline range of 30 to 37 months imprisonment, he argued in his sentencing memorandum that the Court should depart from the guidelines, and he should be sentenced to house arrest or probation only. Petitioner emphasized the advisory nature of the sentencing guidelines, and argued that a court can depart downwards, despite the government's failure to make a motion for a downward departure. Petitioner also argued that the Court should consider the following factors in deciding whether or not to depart downwards from the sentencing guideline range: (1) the amount of the loss substantially overstated the seriousness of the offense, (2) his criminal conduct was atypical and outside the heartland of the guidelines, (3) a downward departure would enable him to make restitution, (4) he had an excellent employment history, (5) he manifested "super" acceptance of responsibility, (6) he showed extreme remorse, (7) he made post-offense restitution, (8) he cooperated with judiciary and facilitated administration of justice, (9) he lost his business, assets, and source of income, and (10) the totality of circumstances authorized the court to make a downward departure.

Petitioner stipulated in his plea agreement that the guideline provisions, including grounds for departure, yielded a range of 30 to 37 months of imprisonment. Therefore, Petitioner could not have argued before the Court at the sentencing that a *guidelines* departure was appropriate. It can, however, be inferred that Petitioner was asking the Court in his

memorandum for a *non-guidelines* departure (also called a variance), taking the remaining sentencing factors in 18 U.S.C. § 3553(a) and the post-*Booker* advisory nature of the guidelines into consideration.[1]

Petitioner's sentencing memorandum relied heavily on the proposition that Petitioner had made substantial payments towards restitution, which was, in fact, incorrect. Despite nine months having elapsed from the time that the Court accepted Petitioner's guilty plea[2], Petitioner's counsel conceded that the amount of restitution still owing at the sentencing hearing was $1,829,000, as specified in the Rule 11 Plea Agreement (Dkt. #20, p. 6-7). Petitioner's counsel then proposed (for the first time) a complex arrangement by which Petitioner would "pledge" or assign some of his and his wife's interests in certain companies to the Probation Department, then broker a sale of those interests, and the Probation Department would be able to use the proceeds towards his restitution obligation (Dkt. #20, pp. 13-14). Petitioner asked the

---

[1]
> Under the mandatory Guideline system, a defendant's only hope of a lesser sentence was a Guideline-based downward departure. . . . Now, because the Guidelines are no longer mandatory and the district court need only consider them along with its analysis of the section 3553(a) factors, the decision to deny a Guidelines-based downward departure is a smaller factor in the sentencing calculus. Furthermore, many of the very factors that used to be grounds for a departure under the Guidelines are now considered by the district court-with greater latitude-under section 3553(a). *See e.g., Mickelson*, 433 F.3d at 1055, 2006 WL 27687 at *5 ("In contrast to the sentencing scheme before *Booker* when a sentence outside the mandatory guideline range was permitted only on very limited grounds, there are now more sentencing variables.").

*United States v. McBride*, 434 F.3d 470, 476 (6th Cir. 2006). The Sixth Circuit then noted that sentences lower than the Guidelines recommendation that are based on section 3553(a) factors can be thought of as non-guideline departures. *McBride* at 477, n.5.

[2]
The sentencing hearing was initially scheduled for July 7, 2005, and was adjourned six times until it was finally held on January 17, 2006. The last adjournment was permitted on Petitioner's oral motion before the Court at the sentencing hearing on November 15, 2005, with Petitioner's assurance that he would make substantial payments towards his restitution obligation.

10

Court to consider this pledge in deciding whether or not to reduce Petitioner's sentence.

> [Defense Counsel]: . . . So I guess we're just trying to make a good faith assignment here, Judge, if it's at all possible. So that perhaps the Court would then consider allowing Mr. Hopper to either be -- have a sentence that would allow him to remain on probation for a period of time and if things weren't done then automatic reporting time, or something creative like that to allow him to try to follow these things up and get these things done.

(Dkt. #26, p. 15.) Petitioner's counsel could not substantiate the value of the assets for the Court beyond some proof of correspondence with potential buyers (who had not actually named a purchase price) and a subscription agreement (Dkt. #20, pp. 16-18). Furthermore, although one arrangement had been delayed to destruction of property caused by Hurricane Katrina, Petitioner did not provide a reasonable explanation as to why he introduced the other two arrangements (which were unaffected by the disaster) to the Court and the government for the first time at the sentencing hearing. The Court noted that it granted an adjournment at the November 15, 2005, hearing, because Petitioner had promised to make a substantial restitution payment within sixty days. Petitioner failed to keep his promise, and the Court remarked that this did not inspire trust in Petitioner. Unsurprisingly, the Court rejected Petitioner's request to discharge any portion of his restitution obligation in this manner.

The Court ultimately accepted the parties' sentencing guideline calculations as set forth in the plea agreement, and did not impose any offense level enhancement that was not the subject of a stipulation. Petitioner was sentenced at the mid-point of the sentencing guideline range to 33.5 months imprisonment, which he had stipulated in his plea agreement would be an appropriate disposition of his case. As such, Petitioner waived all of his rights to appeal his sentence, including his right to appeal errors of law under 18 U.S.C. § 3742.

The Court expressed its desire to exercise its discretion to sentence Petitioner to a term of

11

imprisonment greater than the midpoint of the applicable sentencing guideline range, but that to do so would allow Petitioner to withdraw his guilty plea and allow him to appeal his sentence.

> [THE COURT:] Quite frankly, Mr. Hopper, I -- I find that the sentencing guidelines to which I'm bound unless, in this particular matter, unless I -- unless I give you the opportunity to withdraw your guilty plea and also to have appeal -- of your appeal rights all restored in this matter and since the total maximum sentence for this particular offense is only five years, and I think that's a remarkably lenient sentence for what -- the sort of thing you've done here which is deplorable, utterly deplorable.
> That it's not worthwhile to in this matter depart from the suggested guideline range. I think it's a sentence that is probably too lenient for you, but under all the circumstances I think it's appropriate. Because the maximum sentence under the statute is little more than was allowed by the -- by the suggested guideline range.
> Frankly, I think -- I think your conduct as I say, is deplorable. You're -- you're -- I don't know exactly the right word to use, but -- in your -- in your situation, but certainly your conduct is deplorable, inexcusable, and quite frankly if without allowing you to withdraw your plea here, I had the opportunity to impose a more severe sentence, I might very well consider it.
> But it's not worthwhile because the maximum sentence under the statute in this case is little more than what's permitted by the guidelines here which do allow a sentence in this matters with a total offense level of 19, and a criminal history category of one under the suggested guidelines of 30 to 37 months. Your Rule 11 Agreement which I'm going to honor in this matter limits the sentence to 33 1/2 months.

(Dkt. #26, pp. 27-28.)

Petitioner's cannot argue that his final sentence was a fundamental miscarriage of justice, because the sentence he received was one that he had stipulated in his plea agreement would be an appropriate disposition of his case (Dkt. # 16, p. 5). Petitioner must therefore demonstrate that the court's error was so fundamental as to render the entire proceeding invalid, *Mallett*, 334 F.3d at 496-97.

The Court in this case explicitly stated that it understood that the sentencing guidelines were advisory, and outlined the several factors which it took into consideration:

> [THE COURT]: I've taken into account the suggested guidelines which at one

time were mandatory but now they're only a suggested guidelines [sic]. And I've taken into account also all the matters that the Court is directed to take into account in arriving at a -- at an appropriate sentence.

They -- those include the need for the sentence imposed to reflect the seriousness of your offense to promote respect for the law, and to provide just punishment for the offense. The need for the sentence to afford adequate deterrents to criminal conduct and to protect the public from further crimes and to provide you with the correctional treatment in the most effective manner.

The Court is to take -- is to consider the kinds of sentences and the sentencing range established for the category of offense which you committed by the category of defendant to which you belong. All those things being involved in the suggested guidelines. That I take into account those guidelines, suggested guidelines and also all the other factors that I've just outlined on the record. And also the pertinent policy statements issued by the sentencing commission as well.

(Dkt. # 20, pp. 26-27.)

Petitioner is essentially arguing that the Court's remark ("That certainly doesn't increase your stature in the Court's eyes" ) reflects that the entire proceeding was rendered invalid. In fact, the Court heard and considered Petitioner's request for a variance from the guideline sentence, permitted the government to respond, and decided to reject the request considering Petitioner's failure to make any restitution payments, despite repeated adjournments. The Court also remarked that it was inclined to sentence Petitioner above the midpoint of the suggested guidelines due to the serious nature of the crime, but that it did not want to permit Petitioner to withdraw his plea or file an appeal. The Court clearly stated its understanding of the advisory nature of the sentencing guidelines, and of the several factors to be considered when sentencing the defendant.

Petitioner has also argued that "the Court gave only cursory review of his rights under *Booker* and *Fanfan* (*United States v. Booker* and *Fanfan*, 125 S. Ct. 738 (2005)) under information and belief, due to the letters received from disgruntled personal relationship parties."

13

Dkt. #23, p. 19.[1] In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sixth Amendment is violated when a sentencing judge imposes an enhanced sentence[2] under the United States Sentencing Guidelines, based on the judicial determination of a fact (other than a prior conviction) that was not found by the jury or admitted by the defendant. *Booker*, 543 U.S. at 244. The Supreme Court's remedy for the unconstitutionality of the sentencing scheme was to excise the portion of the guidelines that made them mandatory. Thus, sentencing by federal judges applying the Guidelines as mandatory could violate *Booker*'s requirement that the Guidelines be counted as advisory, even if the sentence did not exceed the maximum authorized by the facts established by a plea of guilty or a jury verdict. Although it is unclear, Petitioner is presumably arguing that (1) his sentence was based on judicially determined facts that were not found by a jury or admitted by defendant, and/or (2) that the court treated the sentencing guidelines as mandatory.

Petitioner's cannot argue that the Court treated the guidelines as mandatory, because the Court explicitly noted that while the Guidelines were at one time considered to be mandatory, this was no longer the case. In addition the Court enumerated several factors it considered in conjunction with the advisory sentencing guidelines when determining Petitioner's sentence and stressed the nature of the criminal acts to which Petitioner had admitted. Regarding Petitioner's claim that the Court relied on judicial fact finding that was unsupported by his own admissions, the court record again contradicts his claim. Petitioner's plea agreement was accepted by the Court without modification, and Petitioner was sentenced according to his own stipulations in the agreement, with no enhancements or upward departures by the sentencing court. Petitioner

---

[1] Page number reflects ECF pagination.
[2] An enhanced sentence is a sentence exceeding the maximum sentence authorized by the facts established in a guilty plea or jury verdict.

has not shown that the Court relied on the letters in deciding not to grant a downwards variance from the sentencing guidelines range. Rather, the Court made clear that the request for a variance was rejected, because Petitioner's failure to fulfil his promise to pay any amount of restitution established him as untrustworthy.

### D. Ineffective Assistance of Counsel

#### 1. Standard

The Supreme Court has established a two-prong test for determining whether counsel's performance was ineffective for Sixth Amendment purposes:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In evaluating alleged prejudice resulting from ineffective assistance of counsel, "[i]t is not enough . . . to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693. Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Ibid.* (citation omitted). Rather, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The standard to be applied is not that of a hypothetical perfect counsel, but that of

15

reasonably effective counsel under prevailing professional norms. *Strickland*, 466 U.S. at 687-88. The fundamental test of effective assistance of counsel is whether counsel "bring[s] to bear such skill and knowledge as will render the trial a reliable adversarial testing process." *Id.*

When evaluating counsel's performance under the *Strickland* test, the Sixth Circuit has emphasized that "[a] reviewing court must give a highly deferential scrutiny to counsel's performance . . ." *Ward v. United States*, 995 F.2d 1317, 1321 (6th Cir. 1993). This is based on the well-established principle that legal counsel is presumed competent. *United States v. Osterbrock*, 891 F.2d 1216, 1220 (6th Cir. 1989), *aff'd denial of post-conviction relief*, 972 F.2d 348 (6th Cir. 1992), *cert. denied*, 507 U.S. 917 (1993). As the Court in *Strickland* stressed:

> it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

466 U.S. at 689.

Petitioner has argued that his retained counsel was ineffective for two reasons: (1) for failing to object at the sentencing to the court's violation of Rule 32, and (2) for failing to advise Petitioner that he could appeal his sentence for ineffective assistance of counsel and for violation of Rule 32.

As a matter of factual clarification, the court record reflects that Petitioner's counsel actively responded to the Court's references to the undisclosed letters. After the Court's comments about the previously undisclosed letters, Petitioner's counsel responded:

> MR. RAGNONE: Judge, could I make one correction?
> THE COURT: Pardon me?

>MR. RAGNONE: Might I make one correction, if I may?
>
>THE COURT: Go ahead.
>
>MR. RAGNONE: Just for the record first. The head coach from the football team I think that made perhaps some discouraging report to you regarding Mr. Hopper, is the ex-husband of his current wife.
>
>THE COURT: I understand that.
>
>MR. RAGNONE: And he --
>
>THE COURT: He related that in -- his communication to me.
>
>MR. RAGNONE: And also that Mr. Hopper was cooperative with the authorities in Florida in testifying against Mr. Markham [sic], I believe was his name. They weren't -- thank you.
>
>THE COURT: He pointed out, among other things that his -- his wife commenced an affair with Mr. Hopper and ended up -- he ended up divorced from his former wife and his former wife ended up married to Mr. Hopper as the fifth wife.
>
>MR. RAGNONE: My client for whatever reason disputes that. There was no affair he said, they were already split up. And Mr. Markham [sic] is charged with insurance fraud, Judge, that's why Mr. Hopper provided whatever information he could to the authorities which I provided the Court with a copy of the subpoena and so on.

(Dkt. #26, pp. 29-30.) Petitioner's counsel clearly endeavored at the sentencing to expose the potential biases that motivated at least one letter to which the Court referred. While he did not utter the words "I object," he did attempt to correct whatever factual inaccuracies that he believed the letters contained. Furthermore, Petitioner's counsel had attached letters to the above mentioned sentencing memorandum, which was submitted well in advance of the hearing, showing that Petitioner's wife was the former Mrs. Marcum, and that Petitioner testified against Mr. Marcum in an insurance fraud case.

Even if it were to be assumed that Petitioner's counsel's failure to object at the sentencing was professionally unreasonable, Petitioner cannot show that any prejudice resulted. Courts are not required to conduct an analysis under both prongs of the ineffective assistance of counsel inquiry. *Mallett v. U.S.*, 334 F.3d 491, 497 (6th Cir. 2003). "If it is easier to dispose of

17

an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Strickland*, 466 U.S. at 697; *see also Kinnard v. U.S.*, 313 F.3d 933, 935 (6th Cir. 2002). As explained above, the sentencing court's violation of Rule 32 was an error of law, not a violation of Petitioner's constitutional rights. Considering that the Court expressed its inclination to sentence above the midpoint of the suggested guideline range, an objection at the sentencing would simply have preserved the issue for appeal. Yet, Petitioner had waived his right to appeal his sentence, including his right to appeal an error of law under 18 U.S.C. § 3742. Therefore, Petitioner's counsel was correct to advise Petitioner that he had no right to appeal his sentence based on the asserted error of law by the Court.[1]

## IV.   CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that Petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody (Dkt. #20) **BE DENIED.**

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D. Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S.

---

[1] The Sixth Circuit has held that disregarding specific instructions from the defendant to file a notice of appeal is *per se* ineffective assistance of counsel in violation of the Sixth Amendment, regardless of whether the appeal would have been successful or not. *Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) (citations omitted). The Sixth Circuit has also held that "application of the *Strickland* prejudice component is inappropriate because it means 'that the defendant never receives the benefit of a lawyer's services in constructing potential appellate arguments.' Prejudice must be presumed." *Ludwig*, 162 F.3d at 459 (quoting *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994)). Yet, in this case, Petitioner does not allege that he ever asked his lawyer to file an appeal on his behalf. Rather, he alleges that his counsel was ineffective for advising Petitioner that he did not have any right to appeal. Both prongs of *Strickland* must therefore be applied.

140 (1985); *Ivey v. Wilson*, 832 F.2d 950, 957-58 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Date: July 10, 2007                                          s/Steven D. Pepe
Flint, Michigan                                           UNITED STATES MAGISTRATE JUDGE

**CERTIFICATE OF SERVICE**

I hereby certify that on July 10, 2007, I electronically filed the foregoing paper with the Clerk Court using the ECF system, which will send electronic notification to the following: Robert W. Haviland, Richard M. Lustig and I hereby certify that I have mailed United States Postal Service the paper to the following non-ECF participants: not applicable.

                                                     s/James P. Peltier
                                                     U.S. District Court
                                                     600 Church St
                                                     Flint, MI 48502
                                                     810-341-7850
                                                     pete_peltier@mied.uscourts.gov